

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| *Zachary A. Myers*<br>*Assistant United States Attorney*<br>*Zachary.Myers@usdoj.gov* | *Suite 400*<br>*36 S. Charles Street*<br>*Baltimore, MD 21201-3119* | *DIRECT: 410-209-4848*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-0716* |

April 11, 2018

Michael D. Montemarano, Esq.
MICHAEL D. MONTEMARANO, P.A.
3826 Paul Mill Rd Ste 204
Ellicott City, MD  21042

BY ———
CLERK'S OFFICE
AT BALTIMORE
DEPUTY
2018 JUN 12  PM 4: 47
FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

Re:   United States v. Roland Chick Akum, CCB-17-0633

Dear Mr. Montemarano:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **April 27, 2018,** it will be deemed withdrawn.

The terms of the agreement are as follows:

### Offenses of Conviction

1.      The Defendant agrees to plead guilty to Counts One and Two of the Indictment which charge him with Sex Trafficking of a Minor in violation of 18 U.S.C. § 1591(a) and (b)(2). The Defendant admits that the Defendant is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offenses

2.      The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

        a.      The defendant knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, a person (in this case, Girl 1 and Girl 2); or benefited financially, or by receiving anything of value, from participation in a venture engaged in those acts;

        b.      The defendant knew, or was in reckless disregard of the fact that Girl 1 and Girl 2 had not yet attained the age of 18 years, or the defendant had a reasonable opportunity to observe Girl 1 and Girl 2;

        c.      Girl 1 and Girl 2 had not attained the age of 18 years;

1

d. The defendant knew that Girl 1 and Girl 2 would be caused to engage in a commercial sex act;

e. The defendant's act of recruiting, enticing, harboring, transporting, providing, obtaining, advertising, or maintaining was in or affecting interstate commerce.

## Penalties

3. The parties stipulate and agree that the statutory penalty for Counts One and Two, is imprisonment not less than ten (10) years, or for life, followed by a term of supervised release of not less than five (5) years, up to life, and a fine of up to $250,000.

4. In addition, the Defendant must pay $200 as a special assessment pursuant to 18 U.S.C. § 3013, *and* must pay a $5,000 special assessment pursuant to 18 U.S.C. §, 3014(a) which will be due and should be paid at or before the time of sentencing. This Court may also order the Defendant to make restitution pursuant to 18 U.S.C. §§ 1593, 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if the Defendant serves a term of imprisonment, is released on supervised release, and then violates the conditions of supervised release imposed by the Court, the Defendant's supervised release could be revoked—even on the last day of the term—and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

5. The Defendant understands and agrees that as a consequence of his conviction for the crime to which he is pleading guilty, he may be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

6. The Defendant understands that by entering into this agreement, the Defendant surrenders certain rights as outlined below:

a. If the Defendant had persisted in a plea of not guilty, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e. The Defendant further waives any and all motions, defenses, probable cause determinations, objections, including any and all constitutional challenges which defendant could assert to the indictment or to the Court's entry of judgment against the Defendant, and any imposition of sentence upon the Defendant consistent with this agreement. If Defendant files a notice of appeal, notwithstanding this agreement, Defendant agrees that this case shall be remanded to the district court to determine whether Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

*R.A of which he presently is aware nom 2AM*

f. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against the Defendant. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

g. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights the Defendant is giving up and about the facts of the Defendant's case. Any statements the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

h. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find the Defendant guilty.

i. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if the Defendant is not a citizen of the United States, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including defense counsel or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

7.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991-998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

8.     This Office and the Defendant understand, agree and stipulate to the following Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

      a.     **Base Offense Level:** The base offense level for each count of conviction is thirty (30) pursuant to U.S.S.G. § 2G1.3(a)(2).

      b.     **Use of a Computer:** Pursuant to U.S.S.G. § 2G1.3(b)(3)(B), there is a two (2) level increase because the offense involved the use of a computer or an interactive computer service to entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor.

      c.     **Sex Act:** Pursuant to U.S.S.G. § 2G1.3(b)(4)(A), there is a two (2) level increase because the offense involved the commission of a sex act or sexual contact.

      d.     **Grouping Adjustment:** Pursuant to U.S.S.G. §§3D1.2 and 3D1.4, Counts One and Two each constitute a separate Group of equal seriousness, and combine for two Units, resulting in an increase of two (2) levels.

      e.     **Repeat and Dangerous Sex Offender Against Minors:** The Defendant understands that the government will argue that should be a further five (5) level increase, pursuant to U.S.S.G. §4B1.5(b)(1), because the Defendant engaged in a pattern of activity involving prohibited sexual conduct. The Defendant remains free to challenge the application of this enhancement.

      f.     **Combined Adjusted Offense Level:** Thus, the combined adjusted offense level is **36 or 41** depending on the Court's ruling on the applicability of U.S.S.G. § 4B1.5(b), prior to any adjustment for acceptance of responsibility.

9.     This Office does not oppose a two-level reduction in the Defendant's combined adjusted offense level, based upon your client's apparent prompt recognition and affirmative acceptance of personal responsibility for your client's criminal conduct. This Office intends to make a motion pursuant to U.S.S.G. §3E1.1(b) for an additional 1-level decrease, assuming your client continues to accept personal responsibility for your client's conduct up to, and through, sentencing. This Office may oppose any adjustment for acceptance of responsibility if your client (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about your client's involvement in the offense; (d) is untruthful with the Court, this Office or the United States Probation Officer; (e) obstructs or

attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw the plea of guilty.

10.     Thus, the final anticipated adjusted offense level is **33 or 38** after the anticipated adjustment for acceptance of responsibility, depending on the Court's ruling on the applicability of U.S.S.G. § 4B1.5(b).

11.     The Defendant understands that there is no agreement as to the Defendant's criminal history or criminal history category, and that the Defendant's criminal history could alter the Defendant's offense level if the Defendant is a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

12.     This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in Chapters 2, 3, 4, or 5 of the United States Sentencing Guidelines will be raised or are in dispute.

### Rule 11(c)(1)(C) Plea

13.     The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a concurrent sentences on each count of conviction of **not more than 15 years' (180 months') imprisonment followed by a five (5) year term of supervised release** is the appropriate disposition of this case. Both parties remain free to recommend any lawful sentence of 15 years' imprisonment, or less. This agreement does not affect the Court's discretion to impose any lawful fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the government would be bound by the specific sentence or sentencing range contained in this paragraph and the Defendant would not be able to withdraw his plea.

### Obligations of the United States Attorney's Office

14.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

15.     At the time of sentencing, the Government will dismiss all open counts of the Indictment.

### No Contact with Girl 1 or Girl 2

16.     While incarcerated and throughout the entire term of his imprisonment, the Defendant will not make any contact, directly or indirectly, with "Girl 1" or "Girl 2," as identified in the attached Statement of Facts. The Defendant agrees to the entry of any Protective Order regarding any contact with Girl 1 or Girl 2. The Defendant specifically agrees that this provision

shall continue following his release and will be part of any supervised release conditions ordered by the Court at the time of sentencing. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. The Defendant waives and agrees to waive any right to challenge any prosecution based on the statute of limitations or double jeopardy and knowingly and voluntarily agrees to toll the limitations period through the end of his incarceration and supervised release.

## Collection of Financial Obligations

17.     The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

18.     In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

19.     The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Forfeiture

20.     The Defendant agrees to forfeit all right, title and interest in the following devices seized by law enforcement authorities and to take whatever steps are necessary to pass clear title to those devices to the United States:

 a.  An Apple iPhone, Model A1688, IC: 579C-E2946A;

 b.  A white Samsung Galaxy Note 5, MEID: 256691584001542436; and,

 c.  A Samsung Galaxy S6, Model SM-G9201, IMEI 359878/06/882725/8.

## Waiver of Appeal

21.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

 a.  The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

 b.  The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to

impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release);

c.   Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error; and,

d.   The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

22.   The Defendant agrees that the Defendant will not commit any offense in violation of federal, state or local law between the date of this agreement and the Defendant's sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under USSG §3C1.1, (ii) fails to accept personal responsibility for the Defendant's conduct by failing to acknowledge the Defendant's guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw the Defendant's guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph. The Defendant acknowledges that he may not withdraw his guilty plea--even if made pursuant to Rule 11(c)(1)(C) -- if the Court finds that the defendant engaged in obstructive or unlawful behavior and/or failure to acknowledge personal responsibility. In that event, neither the Court nor the government would be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to 11(c)(1)(C).

## Entire Agreement

23.   This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

By: Zachary A. Myers
Ray D. McKenzie
Assistant United States Attorneys

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_____4/15/18_____        _____Roland Akum_____
Date                                         Roland Chick Akum

I am Roland Chick Akum's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

_____4/15/18_____        _____
Date                                         Michael D. Montemarano, Esq.

# EXHIBIT A
## STIPULATED FACTS

*The undersigned parties hereby stipulate and agree that the following facts are true, and if this case had proceeded to trial, the government would have proven them beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial*

The Defendant, Roland Chick Akum, a/k/a "Rayne," is a former resident of Silver Spring, Maryland. Akum is a citizen and national of Cameroon, lawfully present in the United States as the child of an asylee. At times relevant to the Indictment, Akum was approximately 24 years old.

The minor identified in the Indictment as "Girl 1" was 15 years old and a resident of Maryland. Girl 1 was a student, most recently in the ninth grade, and had been ordered to the legal custody of Maryland's Department of Social Services.

The minor identified in the Indictment as "Girl 2" was 17 years old and a resident of the District of Columbia. Girl 2 was no longer attending school, and had been ordered to the legal custody of the District of Columbia's Child and Family Services Agency.

On May 4, 2017, Akum contacted Girl 1 on Tagged, a social media platform and wrote "Hmu if u interested in making $$ The name is Rayne.. Im a adult ent booking argent. I focuse on webcamming, escorting, casting etc." Akum later wrote Girl 1, "Escorting is providing companionship to discreet clients," and "Ok u do know what providing companionship [] includes right? Can u spend nights out..? Cause ugotta be down for real if u wnana do this." Akum also asked Girl 1 over Tagged how experienced she was sexually. Akum provided Girl 1 with his phone number for further communications.

Between June and August 2017, Akum transported Girl 1 and Girl 2 to the Red Roof Inn on Baltimore Avenue in College Park, Maryland, and rented hotel rooms for the girls to use to engage in commercial sex with customers. Akum used Backpage, a website that marketed commercial sex, to advertise Girl 1 and Girl 2 for commercial sex. Akum kept for himself a portion of the proceeds that commercial sex customers paid the girls following sex acts.

From June 8 through 12, 2017, Akum rented a room at the Red Roof Inn in College Park. Akum transported Girl 1 and Girl 2 to the hotel, and made the room available for them to engage in commercial sex acts. Akum advertised Girl 1 and Girl 2 on Backpage, seeking commercial sex customers. Girl 1 and Girl 2 engaged in commercial sex acts with multiple customers. Akum kept a portion of the commercial sex proceeds for himself.

From June 28 through July 11, 2017, Akum rented a room at the Red Roof Inn in College Park. Akum transported Girl 1 and Girl 2 to the hotel, and made the room available for them to engage in commercial sex acts. Akum advertised Girl 1 and Girl 2 on Backpage, seeking commercial sex customers. Girl 1 and Girl 2 engaged in commercial sex acts with multiple customers. Akum kept a portion of the commercial sex proceeds for himself.

On July 7, 2017, Girl 1 left Akum and the hotel, and contacted law enforcement authorities, who took her to a hospital and juvenile treatment facility. Girl 1 later told investigators that she and Girl 2 engaged in commercial sex at the Red Roof Inn on several occasions, and provided Akum with a portion of the proceeds.

From July 28 through August 3, 2017, Akum rented a room at the Red Roof Inn in College Park. Akum transported Girl 2 to the hotel, and made the room available for her to engage in commercial sex acts. Akum advertised Girl 1 on Backpage, seeking commercial sex customers. Girl 1 engaged in commercial sex acts with multiple customers and Akum kept a portion of the proceeds for himself.

From August 4 through August 10, 2017, Akum rented a room at the Red Roof Inn in College Park. Akum transported Girl 2 to the hotel, and made the room available for her to engage in commercial sex acts. Akum advertised Girl 2 on Backpage, seeking commercial sex customers. Girl 2 engaged in commercial sex acts with multiple customers and Akum kept a portion of the proceeds for himself.

On August 10, 2017, the Prince George's County, Maryland Vice Unit conducted an undercover Backpage sting at the Red Roof Inn in College Park, Maryland. An undercover officer made a date in response to a Backpage ad containing pictures of Girl 2, who appeared to be a possible minor. After Girl 2 provided the undercover officer a room number for a commercial sex date, officers observed Akum leaving the room. Girl 2 was taken into the custody of child welfare authorities and Akum was arrested. Girl 2 advised authorities that Akum had picked her up earlier that day from Union Station in Washington, D.C., and brought her to the hotel to engage in commercial sex. Akum was arrested and charged with human trafficking and prostitution. Akum was released on bond the following day.

On September 30, 2017, Akum purchased a one-way ticket from Dulles airport to Cameroon, scheduled to depart on October 12, 2017. Akum was again arrested on October 3, 2017, and remains in custody.

Akum knew that Girl 1 and Girl 2 were minors, and had a reasonable opportunity to observe each girl.

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

_____4/15/18_____          _Roland Akum_____
Date                           Roland Chick Akum

I am Roland Chick Akum's attorney. I have carefully reviewed this statement of facts with him.

_____.
Michael D. Monteamrano, Esq.